## GLEN and MAYER *vs.* GIBSON and others.

A court of equity in a sister state has no power to make a decree directing trustees to complete contracts for the sale of lands in this state.

It is a general rule that where one person purchases land of another, he is not at liberty, afterwards, to dispute the title of his vendor. But this rule is subject to several exceptions, and is by no means universal.

Glen *v.* Gibson.

One exception is, where, at the time of the purchase, the vendee is in possession as owner, claiming title, and his original entry was not under the vendor.

Another exception is where the vendee, although he entered under the contract of purchase, yet in making the purchase was deceived or imposed upon.

And *it seems* that where it affirmatively appears that both parties were under an entire mutual mistake, even as to the law, in regard to the right of the vendor to sell, that would form another exception to the rule, and the vendee would not be precluded from showing it; especially where such supposed authority was utterly void and ineffectual.

The rule is confined to cases where the vendee enters into possession of the land under and by virtue of the contract of purchase, or where, if in possession, the possession was without pretense of title or right. Where a man is in possession of land as owner, claiming title, he is at liberty to purchase the land over again as often as claimants shall appear, who are not in possession, and thus quiet such claims and fortify his title, without being estopped from disputing the title of such subsequent vendors, should it afterwards become necessary for him to do so.

TROVER for a quantity of lumber, tried at the Steuben circuit in September, 1848. The plaintiffs claimed title to the lumber, as being the owners in trust, and having the legal title to a tract of land in the town of Caton, Steuben county, from which the trees were cut, out of which the lumber in question was made ; and for that purpose gave in evidence an instrument in writing dated 10th July, 1839, executed by the plaintiffs, reciting that by a decree of Baltimore county court, sitting in equity, bearing date 25th February, 1839, in a case therein pending between John Thomas, Andrew Layton and others, complainants, and Richard Caton and the devisees of Robert Oliver deceased and others, defendants, the said John Glen and Charles F. Mayer, of the city of Baltimore, were appointed trustees in the place and stead of the said Robert Oliver deceased, and of his heirs and devisees, under certain deeds of trust relating to lands in the county of Steuben in the state of New-York, and certain other lands, and were directed by said decree to carry out and complete the contract of sale of the said lands in Steuben county containing 4000 acres, as made between Samuel Boyer, Alexander Klinefelter and Solomon Beard, and the said Richard Oliver and Richard Caton, for the sum of $8000, by taking and receiving from said Boyer, Klinefelter and Beard, their eight bonds for the

payment of $1000 each, in 1, 2, 3, 4, 5, 6, 7 and 8 years, with interest thereon from the time possession was obtained of said lands, &c. and by executing and delivering to said Boyer, Klinefelter and Beard a bond of conveyance for the said land in Steuben county, and to convey the said lands to the said Boyer, Klinefelter and Beard, &c. on payment of their said bonds. Also reciting that the said Boyer, Klinefelter and Beard had executed to the said plaintiffs, trustees, their eight several bonds for $1000 each, dated June 25, 1839, and payable as aforesaid, agreeable to said decree, and had thereby become entitled to receive from the plaintiffs a bond of conveyance for said lands, agreeably to the directions of said decree. The said plaintiffs, as trustees, &c. therein, then bound themselves to Boyer, Klinefelter and Beard, on payment of the eight bonds, to execute and deliver to them a deed in fee for the said 4000 acres of land in Steuben county, which were conveyed in trust to said Robert Oliver by said Richard Caton, by indenture dated March 13, 1825, and recorded, &c. of all the estate, right, title, &c. of said Oliver and Caton, &c.

The plaintiffs then gave in evidence eight bonds executed by the said Boyer, Klinefelter and Beard to the plaintiffs, describing them as "trustees appointed by Baltimore county court, sitting as a court of equity between" &c., same parties as mentioned in the last instrument, in the penalty of $2000 each, with condition, after reciting the provisions of the decree as aforesaid, for the payment of $1000 with interest &c., the times of payments in the several bonds varying according to the directions of the decree, as stated in the other instrument. These bonds all bore date June 25, 1839. The plaintiffs then gave evidence tending to show that a large quantity of pine lumber was made from timber taken by the direction of Samuel Boyer, in the winter of 1843–4, from the tract of 4000 acres in Steuben county, mentioned in the said instrument and bond, which lumber was sold by said Boyer to the defendants, and is the lumber in controversy.

After the plaintiffs had got through with their evidence, and rested, the defendants introduced in evidence an exemplification of the proceedings and decree in the Baltimore county court, by which it appeared that the bill of complaint was filed June 30,

Glen *v.* Gibson.

1837, setting forth among other things, in substance, that by deed dated March 13, 1825, Richard Caton conveyed to Robert Oliver certain lands in the state of New-York and in Pennsylvania, in the deed particularly described, upon trust, to sell the same and apply the procceds of sale for the benefit of certain persons mentioned, including the complainants, referring to the deed, a copy of which was annexed to the bill, &c.; that the trusts mentioned in the deed had not been executed, and that the said land so conveyed in trust had not been sold; and that said Robert Oliver was dead, and that his heirs and devisees declined executing the trust, and wished to be released therefrom, and praying for the appointment of new trustees in place of the said Robert Oliver deceased, &c.

The said exemplification showed that after various petitions and amendments to the bill, by adding and changing parties, and other proceedings not necessary to be stated here, the said Baltimore county court, on the 25th day of February, 1839, passed a decree among other things appointing the plaintiffs in this suit trustees in the place and stead of said Robert Oliver deceased, ordering the heirs and devisees of said Oliver, who were parties to the said suit in equity, to convey and release the said four thousand acres in Steuben county, to the said new trustees, who, it was thereby declared, should hold the said lands subject to the trusts declared in the said deed from Caton to Oliver; and authorizing them to make the sale to Boyer, Klinefelter and Beard, as aforesaid. It was admitted that said Robert Oliver died in 1834.

After various other matters had been given in evidence by and on behalf of the defendants, not material to the questions now decided, the counsel for the defendants offered to prove that the said Boyer, Beard and Klinefelter were in possession of the 4000 acre tract of land in question, claiming title, in Feb. 1837, and that they had ever since continued so in possession, claiming title; that the plaintiffs never were in possession of the tract, or any part thereof; that Boyer being so in possession claiming title, had for this whole period from 1837 to the time of the commencement of this suit, cut and sold the timber and

lumber from this tract, without objection on the part of the plaintiffs, and that while Boyer was thus in possession the defendant Lyman Gibson purchased from him the lumber in controversy in this suit, and paid for it in full, before any notice of any claim of the plaintiffs. This evidence being objected to by the plaintiffs' counsel, was excluded by the justice presiding at the circuit, who held that the defendants and Samuel Boyer were estopped from disputing the plaintiffs' title, or setting up title in themselves, and that the plaintiffs had shown sufficient, as against the defendants, to establish title in themselves. To which decision and ruling the defendants excepted. The plaintiffs recovered a verdict for the value of the timber, &c. Other questions arose in the course of the trial, which are also presented on the bill of exceptions, but as no notice is taken of them in the opinion which follows, it is unnecessary to state them. The defendants moved for a new trial.

*John A. Collier*, for the defendants.

*B. Davis Noxon*, for the plaintiffs.

*By the Court*, Welles, P. J. The plaintiffs entirely failed to show title in themselves to the lands upon which the trees grew and were cut, out of which the lumber was made, for the conversion of which, the action was brought. Upon the death of Oliver, the trustee, in 1834, the trust estate did not descend to his heirs, or pass to his personal representatives; but the trust, being then unexecuted, the estate vested in the court of chancery of this state, and could only be executed by some person appointed for that purpose, under the direction of that court. (1 *R. S.* 730, § 68.) The proceedings of the Baltimore county court in equity, conferred no right whatever upon the plaintiffs, as trustees or otherwise, in relation to the lands in question. They were entirely null and void in regard to the lands in this state.

The question is, whether Boyer or those claiming under him, are at liberty to set up and alledge the want of title in the plain-

tiffs, after he, (Boyer) with Beard and Klinefelter, had entered into an agreement for the purchase of the lands from the plaintiffs.

The proceedings of the court in Baltimore, which were introduced and made evidence by the defendants, show by the amended bill filed in that court, that Boyer, Beard and Klinefelter had contracted with Caton and Oliver, for the purchase of the same land. This must have been as long ago as 1834, as Oliver died in that year. The contract of purchase from the plaintiffs was in July, 1839, and was made in pursuance of the decree of the Baltimore court, which was passed in February, 1839. If that arrangement had been carried out, and effectuated by the payment of the purchase money, and the execution of a conveyance by the plaintiffs, it is impossible to see that the purchasers would thereby have acquired any title whatever, legal or equitable, to the land. The proceedings in the Baltimore court seem to have been founded in an entire misapprehension of the law, and of the power of that court over the subject matter of the suit, as regards lands in this state.

The defendants offered to prove that Boyer, Beard and Klinefelter were in possession of the land, claiming title, from February, 1837, and had ever since so continued in possession; that the plaintiffs never were in possession of the land, or any part of it. That Boyer, being thus in possession claiming title, had, for the period from 1837 up to the commencement of the suit, cut and sold the timber and lumber from this land, without objection on the part of the plaintiffs; and that while Boyer was thus in possession, the defendant Lyman Gibson purchased from him the lumber in controvesy, and paid for it in full, before receiving any notice that Boyer had no right to sell it. This was objected to by the plaintiffs' counsel, and the evidence excluded by the judge; who held that the plaintiffs had shown sufficient, as against the defendants, to establish title in themselves; and that Boyer and the defendants were estopped from disputing the plaintiffs' title, or setting up title in themselves. I am constrained, for several reasons, to dissent from the learned justice in excluding the evidence offered, and in holding as matter of

Glen *v.* Gibson.

law, that, the defendants and Boyer were estopped from disputing the plaintiffs title, or setting up title in themselves. I am aware of the general rule, that where one person purchases land of another, he is not at liberty afterwards to dispute the title of his vendor. (*Jackson* v. *Ayres,* 14 *John. R.* 224, *and note* (*a*) *at the end of the case.*) This rule, however, is subject to several exceptions, and is by no means universal. One exception is, where, at the time of the purchase, the vendee is in possession as owner, claiming title, and his original entry was not under the vendor. (*Jackson* v. *Leek,* 12 *Wend. R.* 105; *Jackson* v. *Spear,* 7 *Id.* 401; *Jackson* v. *Cuerden,* 2 *John. Cas.* 353.) In this case one part of the offer was to show that, in 1837, and from that time down to the trial, Boyer, from whom the defendants purchased the lumber, together with Beard and Klinefelter, were in possession as owners, claiming title. This would have been *prima facie* evidence of title in Boyer and his associates, commencing several years prior to any pretense of title in the plaintiffs, and to the contract of purchase with them. I understand the rule in question is confined to cases where the vendee enters into possession of the land, under and by virtue of the contract of purchase, or where, if in possession, it was without pretense of title or right. But where a man is in possession of land as owner, claiming title, he is at liberty to purchase the land over again as often as claimants shall appear, who are not in possession, and thus quiet such claims and fortify his title, without being estopped from disputing the title of such subsequent vendors, should it afterwards become necessary for him to do so. The principle is, that where one is put in possession of land by another, the former is not at liberty to controvert the title of the latter, until he has restored the possession so received, and placed the other party in as good condition as he was before he parted with the possession. Another exception to the rule in question is, where the vendee, although he entered under the purchase, yet in making the purchase, was deceived or imposed upon. (*Jackson* v. *Ayres,* 14 *John.* 224.) And I am inclined to think, that where it affirmatively appears that both parties were under an entire mutual mistake even as to the law,

---

in regard to the right of the vendor to sell, as in this case, it would form another exception to the rule; and the vendee would not be precluded from showing it; especially where such supposed authority was utterly void and ineffectual. (*Story's Eq. Jur.* §134.)

I forbear noticing the other points raised upon the argument, as the views already presented are sufficient to show that the defendants are entitled to a new trial.

New trial granted.

