# 𝕮𝖆𝖘𝖊𝖘

# FIRST DEPARTMENT

AT

# GENERAL TERM.

## June, 1891.

---

## THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, APPELLANT, v. HOPPER S. MOTT AND OTHERS, RESPONDENTS.

*Adverse possession — there must be no recognition by one claiming title by adverse possession of any superior title — what is such recognition.*

In order to constitute a possession of real property, which shall be adverse, there must be no recognition, by the occupant or his predecessor in occupancy, of the real title.

An adverse possession was claimed of premises lying, outside of high-water mark, in the Hudson river at the city of New York, and it appeared that two persons, each at the time holding the legal title to the upland adjacent to such land under water, had severally applied to the commissioners of the sinking fund of said city for a water grant of the premises in question.

*Held,* that although no grant was made to either of them the application was a recognition of the superior title of the city, and precluded their successors from making a claim of title, by adverse possession, to the land under water.

APPEAL by the plaintiff, the Mayor, Aldermen and Commonalty of the City of New York, from a judgment entered in the office of the clerk of the county of New York, on the 1st day of December, 1890, in favor of the defendants, also from a judgment entered in said office on May 28, 1890, being a judgment rendered in favor of defendants upon a former trial of this action of ejectment; also from an order entered in said office on the 10th

day of December, 1890, denying the motion of plaintiff for a new trial. Both trials were had before the court and a jury at the New York Circuit.

*C. Blandy*, for the appellant.

*Cecil Campbell Higgins*, for the respondents.

VAN BRUNT, P. J.:

This is an action in ejectment brought by the city to recover possession of certain premises lying outside of the high-water mark of the Hudson river, between Fifty-fourth and Fifty-fifth streets in this city. The defendants denied the ownership of the plaintiffs in the lands in question and alleged an adverse possession.

Upon the trial the defendants attempted to establish title through a so-called Dutch grant, bearing date in 1642, and also by adverse possession. The jury having found a verdict in favor of the defendants, from the judgment thereupon entered, and from an order denying a motion for a new trial, this appeal is taken. So far as the defendants attempted to establish any title under the so-called Dutch grant, we think there was an utter failure of proof. There was no evidence whatever, even of the existence of a Dutch paper, much less that it was a grant, or that it included the premises in question. There was considerable testimony of a legendary character in respect to some Dutch paper, and to a paper which had the figures 1642 upon it, but we have been unable to find in the record in this case any legal proof of the existence of any grant. The defendants, however, claim to sustain their title by proof of adverse possession, and the question to be considered upon this appeal is whether that defense is made out by the evidence.

It was established that about 1853 the ancestors of the defendant Mott filled out the premises in question, and occupied the same down to the time of the commencement of this action, and this would probably have been sufficient to establish a title by adverse possession had there been no recognition of the superior title of the plaintiff to the land in question.

It is familiar history that the city of New York acquired by grant from the State the absolute title of the land in the tide-way lying between high and low-water mark, and that in respect to

lands under water outside of the tide-way, granted by the State to the city, the title vesting in the city was subject to a pre-emption right in the proprietors of the grants of adjacent lands in the tide-way or in the owner of the uplands in front of the lands in the tide-way. (*Mayor* v. *Hart*, 95 N. Y., 452.)

We find, however, that on two occasions the holder of the legal title of the lands in question has recognized the superior title of the land now claimed by the defendants.

In 1853 a trustee holding the legal title to the premises in question made an application to the commissioners of the sinking fund for a water grant on the North river, between Fifty-third and Fifty-fifth streets. It is true that no conveyance was taken from the city on this application, but that in no way affects the recognition of the title to the premises in question in the plaintiff. Again, in 1870, one Jordan Mott, being the owner of the premises, made an application to the commissioners of the sinking fund for a water grant extending out to the permanent exterior line as then established in front of the premises, shown upon a diagram annexed to the application, of which he claimed to be the owner.

It is urged that this diagram shows that the application for a water grant was for land extending outside of that which was then occupied by Jordan Mott, and which was beyond the low-water mark in front of the uplands held by him. We think, however, that this construction cannot prevail. The diagram shows distinctly that it was intended to represent the uplands belonging to Jordan Mott because of the ownership of which he claimed a pre-emptive right to a grant of the lands under water. To the lands under water outside of the low-water mark this pre-emptive right was explicitly given by statute; whereas his pre-emptive right to the land between high and low-water mark was merely by implication. (*Mayor* v. *Hart*, *supra*.)

Upon the diagram the high and low-water mark is attempted to be shown, and the upland owned by Jordan Mott is also delineated, and the only possible object in placing these lines upon the diagram was to show from where the grant was to commence. If no application was made for land except beyond that which was already occupied by him, the existence of the high-water mark lines would

have been entirely immaterial. He made this application simply because he was the owner of the upland, There was nothing upon the diagram to show that there was any land beyond the high-water mark, or that any claim to ownership of land beyond high-water mark was made. Having made this application in that form as the owner of the upland, it cannot now be said that such application was no recognition of title to the land under water which he was then occupying, and to fortify the title to which the application for a grant was made. The land which was filled in was in no sense of the word upland. The provisions of the statute when they give a right of pre-emption to the grantee of land which had been under water, distinctly mention an owner of that description. In all other cases where adjacent owners are spoken of it is apparent that those who own the land above high-water mark are meant. Under these circumstances, this application for a water grant upon the part of Jordan Mott was a clear recognition of the superior title to the land in question in the plaintiff.

But it is said that there was proof from which the jury had a right to find that at the time of this application Jordan Mott was an imbecile and incapable of doing any act which would have any binding force. That he was a drunkard and that his habits were bad was established beyond question. But there was no evidence from which it could be inferred that he was unable to transact business in 1870. In fact, we find, at and about this time and subsequent thereto, that he was transacting his own business, executing deeds and leases, and, in 1869, over a year after the medical testimony showing him to be an imbecile, making a will which was admitted to probate and never questioned. He seems to have been considered, by those around him, sufficiently intelligent to transact any and all business except to make an application to the commissioners of the sinking fund for a grant of land upon which his ancestors had squatted. But it is urged that Mott never accepted a grant from the city; and that even if he had there was no rule which prevented him from fortifying his title.

This position, however, seems to be in conflict with the authorities in this State. It has been distinctly held that an offer to purchase land by a party bars the defense of adverse possession in regard to the land by that party. (*Jackson* v. *Croy*, 12 Johns., 427; *Jackson*

v. *Britton,* 4 Wend., 507.) In the latter case it was held that where a person has the title, such title cannot be affected or impaired by any negotiation had by him with parties claiming to be the owners of the premises; but such negotiation would be conclusive against any claim founded upon adverse possession. A similar rule was laid down in the case of *Calkins* v. *Isbell* (20 N. Y., 147), in which it was held that proceedings to foreclose a mortgage by advertisement is such an acknowledgment of the right of the mortgagor to redeem as to repel the presumption otherwise arising from more than twenty years' possession by the mortgagee. In order that a possession shall be adverse to the real title there can be no recognition thereof. As is seen in the cases cited, the moment that an outstanding title is recognized, even by negotiation for its purchase, it is an admission of the right of the real owner to possession, and the possession of the party in possession ceases to be adverse.

This being the rule, even though the jury had a right to find that Jordan Mott had not sufficient mental capacity to understand the nature of the act when he executed the application to the sinking fund in 1870, a fatal error was committed by the learned court in refusing to charge, as requested by the plaintiff, that if the jury found that Jordan Mott did possess sufficient mental capacity to understand the nature of the act when he executed that application, then the jury must find for the city.

It is true that the court did charge, at the request of the plaintiff, that nothing short of an entire want of mental capacity to understand the nature of the act on the part of Jordan Mott would defeat the legal effect of his application to the sinking fund in 1870. But this did not meet the claim which the plaintiff had presented in the previous request, that if he had the mental capacity, then the city was entitled to recover. What the legal effect of his application to the sinking fund commissioners in 1870 had been was omitted.

Thus the jury were left not only to consider the application itself, which was not ambiguous as to its extent, but also to determine what the legal effect of this application to the sinking fund commissioners in 1870 had been. We think this was a fatal error. As has already been shown, the legal effect of that application was to waive the claim of adverse possession, being a recognition of the superior title of the city to the lands in question. It was a recognition that his only

right to lands under water was by reason of his being the owner of the uplands; and having thus recognized title in the city, he could not claim to be at that time holding adversely to the city.

We think, therefore, that the judgment and order appealed from should be reversed, and a new trial ordered, with costs to appellant to abide event.

DANIELS, J., concurred.

Judgment and order reversed, and a new trial ordered, with costs to the appellant to abide event.