### HINDLEY v. MANHATTAN RY. CO. et al.

(Supreme Court, Appellate Division, First Department. April 7, 1905.)

1. ADVERSE POSSESSION—INCORPOREAL RIGHTS.

A street railway company entered upon a street by consent of the municipal authorities, expressly claiming that its occupation was limited to the public right in the street, and that it did not invade any property right possessed by abutting owners. Afterward a case was decided which held that the occupation of the street by the railway company was in fact an interference with the abutting owners' easements of light, air, and access. *Held*, that limitations did not begin to run against the right of an abutting owner to sue for the injury to his incorporeal rights until the determination that the company was interfering with such rights.

2. SAME—ADMISSION THAT POSSESSION IS NOT ADVERSE.

Where a street railway company which occupied a street so as to interfere with the abutting owners' easements of light, air, and access made compensation to some owners for such interference, it thereby admitted that its use of the easements was not hostile and adverse as to any of the owners.

Appeal from Special Term, New York County.

Action by John H. Hindley against the Manhattan Railway Company and another. From a judgment for plaintiff (85 N. Y. Supp. 561), defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Julian T. Davies, for appellants.
Charles F. Brown, for respondent.

HATCH, J. This is the usual action in equity, brought to secure an injunction perpetually enjoining and restraining the defendants from the maintenance and operation of its railroad, or, in the alternative, to have damages assessed. No question is raised respecting the amount of the damages which have been awarded in the judgment. The defendant, however, denies any liability to the plaintiff

under the claim that it has acquired a prescriptive right and title by user for more than 20 years of the plaintiff's property rights in the street where it operates its railroad. The trial court, in making disposition of this case, has written an able and learned opinion covering nearly every question involved in this controversy. We might well affirm this judgment upon that opinion, but, in view of the argument which has been had and the importance of the question, a few additional observations will not be out of place. The entry upon Sixth avenue by the defendant was under a legislative grant, which fixed and defined the rights which it took. However invisible the line between the public and the private right, nevertheless it is clear that the entry was made under the consent of the local authorities pursuant to the legislative grant, and the occupation of the street thereunder was claimed by the defendant to be limited to the public right in the street; that it did not invade any property right of any character possessed by the abutters upon the street, and never so intended. In fact, it did invade the property rights of abutting owners. The defendant, however, denied that it had invaded such rights, and stood squarely upon the terms of its grant and the power of the local authorities and the Legislature to make it. In the beginning, therefore, there was no claim of right to use or take any property right whatever of the abutting owners. It has been argued with force by the learned counsel for the defendant that, having entered under the grant, and making no other claim to title or right to use the street beyond the limits of the authority thus conferred, no prescriptive right could be obtained in the incorporeal rights of abutting owners, for the reason that none was asserted to exist when the defendant entered into occupation and use. It is claimed on the contrary that it was settled by the Court of Appeals in A. B. N. Co. v. N. Y. E. R. R. Co., 129 N. Y. 252, 29 N. E. 302, that title or right by prescription could be acquired by an entry under this grant, and that an open, notorious, adverse user of the incorporeal rights of the abutting owner for 20 years would ripen into a title by prescription. It must be admitted that the language used in that case is clearly susceptible of such construction. This holding is based upon the view that "neither the company nor individuals along the line knew that this title was imperfect, because there were incorporeal rights in the street, belonging not to the public, but to the abutting owners; and yet the property in fact existed, and the company took it without right, but it must be admitted, under color of title and claim of right, since the property taken was within the apparent and possible boundaries of the grant under which the entry was made, and for a time was supposed by both parties to be in fact within its actual and legal boundaries." The discussion upon that subject, however, was obiter, as the decision was put upon the ground that the defendant's structure had been changed within the alleged prescriptive period, and therefore that no title by prescription had been established. The learned judge who wrote therein said that the entry under the grant was of such a character that there was "no conscious or intended adverse holding by the company, and no conscious or intended submission

by the plaintiff." In his general observations it is stated that the entry and possession which might ripen into title must be of such a character as to constitute it "a general claim adverse to all others." It is a little difficult to see how, under a grant which only authorized an occupation and use of the public rights, a claim of such rights alone could be held to be an adverse claim of occupation of the private property right of the abutter. The general rule is that, where a party enters under a grant, his right is strictly limited to the property conveyed by its terms. He may, in fact, extend his occupation and use of property beyond the limits of the grant, but such occupation and use will never ripen into a title, no matter how long continued, to the property outside the terms of the grant, unless such entry, use, and occupation is asserted by some act independent of the grant. The reason for this rule lies in the fact that the adverse occupation and user of property outside of the grant was never initiated. The entry being thereunder, the right of use and occupation is limited by its terms. I am not able to see any distinction between the grant in this case and in any other. Here the grant was of the public right. Use and occupation of the abutters' property rights was outside its terms; and, as there was never any assertion of any other adverse claim to the use and occupation of such property, no title could be acquired to it by mere acts of occupation and user. Reliance is also placed upon the case of Lewis v. N. Y. & H. R. R. Co., 162 N. Y. 202, 56 N. E. 540. If this case is now to be regarded as authoritatively stating the law, it does not support the contention of the appellant. Therein the entry was made upon the street in 1835. At that time Fourth avenue in front of the property involved in that case was not opened, and it so remained until between 1850 and 1853, when it was opened and extended, and an award of damage was made to the railroad company then in occupation of the street for such opening upon either side of its tracks. The railroad company also held a deed conveying title to that portion of the street which it occupied. This occupation from the beginning was therefore under claim of title to the street. In the subsequent decisions which have been had respecting property rights of different parcels upon such street by reason of the viaduct which has been constructed and made necessary to carry the railroad over the changed grade at the Harlem river it was held that such construction was made by the command of the state, and that the railroad company incurred no liability by obeying such command, even though it infringed upon the incorporeal rights of abutting owners. Fries v. N. Y. & H. R. R. Co., 169 N. Y. 278, 62 N. E. 358. There is nothing, therefore, in these cases, which establishes as a conclusive rule of law that title by prescription to the incorporeal rights of abutting owners upon the street where the railroad is constructed can be acquired by prescription. Other cases in this state and in other jurisdictions have been called to our attention, bearing with more or less force upon the subject. We do not find it necessary, however, at this time to determine such question, as it is not essential in the disposition of this case. We therefore express no opinion thereon. It was said by Judge Finch, in A. B. N. Co. v. N. Y. E. R.

R. Co., supra, that to obtain title by prescription the undisputed proof must show "that the party asserting title entered upon the premises under a claim of right adverse to the true owner, and retained an open, exclusive, and hostile occupation for twenty years, to the knowledge and palpable injury of such owner, while not incapable of vindicating his rights"; and where "there are no other or contradictory facts, a presumption of title will arise, and the court should find in accordance therewith."

In the learned opinion below the question of what will constitute a title by prescription is stated and supported by authority. This question is ordinarily one of fact, although it may in given cases become one of mixed law and fact. In order, however, to initiate such a title, there must have been an adverse entry. There was certainly no such entry in this case prior to October, 1882. On that day the case of Story v. N. Y. E. R. R. Co., 90 N. Y. 122, 43 Am. Rep. 146, was decided. It clearly appears from the discussion therein that the defendant up to that time did not claim that it had occupied or invaded any of the incorporeal rights held by the abutting owner. On the contrary, it repudiated the claim that it had entered thereon, either adversely or otherwise. Its position then was that its occupation was limited solely to the public right. After the decision in that case, by which it was established that the use of the street did invade the private right, the defendant recognized such invasion, and made compensation to abutting owners, sometimes compelled by actions resulting in judgments, by condemnation proceedings, and by voluntary recognition of liability and payment. From time to time the defendant has sought to escape the legal effect of the decision in the Story Case, but without success. Lahr v. Met. El. R. R. Co., 104 N. Y. 268, 10 N. E. 528; Abendroth v. M. R. Co., 122 N. Y. 1, 25 N. E. 496, 11 L. R. A. 634, 19 Am. St. Rep. 461. This action was brought in July, 1901. The period, therefore, within which the prescriptive right could be obtained had not run at the time when this action was begun, for within the 20 years the defendant was strenuously denying that it was in occupation, or used the plaintiff's property rights. We have carefully examined the evidence in order to discover when the adverse claim was first asserted, and are unable to find any affirmative act upon the part of the defendant when it can be said that it initiated a claim of title to a prescriptive right. It is true that the railroad was in notorious occupation of the street, that it operated its trains thereon, and that it claimed the right so to do; but these acts of themselves were not inconsistent with a recognition of the plaintiff's incorporeal rights in the street. During this period the plaintiff could not obtain a judgment of ouster of the railroad from the street, as it was legally there under its charter rights. He could not maintain ejectment, because there was no right upon which the judgment could operate, and the sheriff would be unable to execute a judgment placing him in possession of the right which he was entitled to enjoy. The abutters' remedy seems to have been in an action to recover damages for the trespass, or by suit in equity to restrain the operation until compensation was made; but during this

period of time the defendant recognized the property rights of the abutting owners, and made compensation therefor to many. As late as April 15, 1898, it voluntarily settled for the property right of 812 Sixth avenue, in the immediate vicinity of the plaintiff's property. On September 20, 1899, there was an action pending, brought by John M. Hazard, of 502–504 Sixth avenue, against the defendant to recover damages for the invasion of his property rights. The defendant therein set up the statute of limitations. After the commencement of the action the case was voluntarily settled by the defendant. These settlements show that down to a very recent period the defendant still recognized the property rights of abutting owners at various places upon Sixth avenue, and one at least in the immediate vicinity of the plaintiff's property. It is said, however, that these admissions did not destroy the prescriptive right which had been acquired, as there was no community of interest "between the abutting owners with respect to easements of light, air, and access in the public streets." We think this claim was fully answered by the discussion of the learned court below, and need not be further adverted to here. Quite aside from this question, however, is the condition of the defendant's railroad. It has a grant to construct and operate its railroad in Sixth avenue. If it ever initiated an adverse right, it certainly did not assert it as against any particular abutter upon the street. Its claim is based upon a hostile use extending the whole length of its line. In its operative effect upon abutting property it varies in degree only. It was by this open user that it claims to have acquired title by prescription. If it acquired it at all, it must have acquired a right which operated alike upon each property owner on the avenue who had acquiesced in such use and operation. By no possibility could it be asserted that it acquired a prescriptive right against one property owner and did not acquire a prescriptive right against the one adjoining. Its prescriptive title runs the whole length of the street, and as to those property owners who have acquiesced in the use and occupation, if it acquired title to one piece of property, it acquired title to all. There was no separation in use and no separation in the invasion, save in degree. When it recognized the title of one property owner upon the street, it broke the entire chain of open, notorious, and hostile occupation, and effectually disclaimed, when it voluntarily settled and paid such owner for the use and occupation, any prescriptive right for the whole length of its line upon the street. The act of settlement in such case is entirely inconsistent with the claim of prescriptive title upon other portions of the street dependent upon the same proof. The case of Mayor v. Mott, 60 Hun, 423, 15 N. Y. Supp. 22, and other cases cited by the learned court below upon this subject, are abundant in support of the doctrine above announced. The recognition of the rights of abutting owners has been continuous from the decision in the Story Case down to a very recent period and both before and after the claimed prescriptive title had been acquired. Such acts are inconsistent with the assertion of such a title. It is not needful that we further prolong this discussion.

For these reasons and those discussed by the learned court below, we reach the conclusion that the judgment should be affirmed, with costs.

O'BRIEN, INGRAHAM, and LAUGHLIN, JJ., concur.

VAN BRUNT, P. J. I concur in the result upon the ground that, the plaintiff being unable to oust the defendant, no prescription ran because of his failure to do so