ARCADY CAMPS, INC., and Another, Respondents, Appellants, *v.* ELMER BERRY and Others, Appellants, Respondents.

Third Department, November 15, 1923.

Ejectment — verdict that legal title is in plaintiffs not against evidence — adverse possession — verdict for plaintiffs that defendants did not hold adversely for more than twenty years supported by evidence — jury has power under Civil Practice Act, § 459, to find special verdict — court had no power to direct general verdict — court may set aside one of several findings in special verdict.

In an action of ejectment the special verdict of the jury finding that the legal title to the land in question is in the plaintiffs is not against the weight of the evidence.

The finding in the special verdict that the defendants had not held adversely for more than twenty years is supported by the evidence, since it appears that while the land in question was fenced by one of the defendants, it also appears that within the twenty-year period said defendant by his course of dealings admitted that he did not have title and it was only within the twenty-year period that he had actually asserted his title to the land as against the plaintiffs.

In an action of ejectment the jury has the power under section 459 of the Civil Practice Act to find a special or a general verdict, and the court is without power to direct the finding of a general verdict; it may direct judgment on a special verdict embracing the finding of all the necessary facts.

The court has power to set aside one of several findings in a special verdict.

CROSS-APPEALS by the plaintiffs, Arcady Camps, Inc., and another, and by the defendants, Elmer Berry and others, from an

order of the Supreme Court, made at the Schenectady Special Term and entered in the office of the clerk of the county of Warren on the 18th day of November, 1922, setting aside in part and sustaining in part a special verdict of a jury.

*James McPhillips* [*C. E. Fitzgerald* of counsel], for the plaintiffs.

*Frank B. Wickes,* for the defendants Elmer Berry and Max J. Exner.

*Phillips, Mahoney & Leibell* [*Frank B. Wickes* of counsel], for the defendant Sophia H. Mann.

HASBROUCK, J.:

There is a point of land jutting out in Lake George near the village of Hague in Warren county.

The ownership of this point is in dispute here. The claim to it on the part of the plaintiffs is by a deed under a claim of title arising in 1833 from one Ellice to one Brunson. The claim of the defendants is based on a title arising from the same source in 1856 under deed to one Thomas Dunn. The claim of the plaintiffs to this point of land, described in the testimony as Pardo's point and Stark's point, is prior in point of time to that of the defendants, and is based upon a starting point — the northwesterly corner of lot No. 93. This is an undisputed point in the southerly boundary in what is known as the Law patent. The deed of the plaintiff calls for two lots of land numbered 93 and 94 on a map of the Ellice property, the westerly line of which as described in such deed is fifty-one chains in length. A line running parallel with the Law line from that point eastwardly toward the lake ends on the lake shore south of the point in question. The width of lot No. 93 is described as being twenty-four chains and that of lot No. 94, twenty-seven chains. The acreage given of lot No. 93 is 100 and of lot No. 94, 140. According to courses and distances and the amount of land conveyed, the terms of the deed to Wilkinson, the predecessor in title to the plaintiffs, describe with substantial accuracy the premises a part of which is the point of land in dispute.

In about the year 1900 Col. W. D. Mann, who had been leasing an island in Lake George, conceived the idea of acquiring title in his daughter's name to the point and he purchased from one Jared Bartlett the upper half of what is known as lot No. 95. After purchasing it he had a survey made by one Lee Palmer and that survey was based upon the theory that the southerly lines of lots Nos. 93, 94 and 95 were projections of the southerly lines of lots Nos. 113, 112 and 111 of the Ellice lots. The effect of that survey is to place in dispute a strip of land having a width at the

westerly end of 1 chain and 83 links running from the easterly bounds of lot No. 111 to the lake.

The claim of the defendants is that the tier of lots fronting Lake George on the west was laid out in rectangular form and that lots Nos. 93, 94 and 95 when laid out coincided on their westerly ends with lots Nos. 113, 112 and 111 lying next to them. So that the southwesterly corner of lot No. 94 was the southeasterly corner of lot No. 112. The claim of the plaintiffs is that, according to the description by metes and bounds in various deeds in their chain of title, no such coincidence ever existed. The maps and surveys made of the premises in question rest for their accuracy on either of these claims. Neither of them have been proven with incontestable accuracy. The jury has found for the plaintiff upon the issue. The trial court has accepted it and with its determination there is no occasion for disagreement. The defendants too claimed ownership of the disputed point by adverse possession. I am not persuaded that the point of land had been adversely possessed for any length of time by the predecessors in title of the defendants prior to the deed in 1900 of Jared Bartlett to Emma Mann Vynne. The defendants assert that in the year 1900 Colonel Mann, the father of Mrs. Vynne, under her authority erected a wire fence upon the southerly boundary of lot No. 94 and northerly boundary of lot No. 95 as surveyed by one Palmer, claiming to own the same under the Bartlett deed. That fence stood there from that time until the commencement of this action about January 10, 1922. The defendants claim that it was erected as an assertion of the ownership of their predecessors in occupancy or title. The plaintiffs contend that the fence was erected under permission granted by Mrs. Wilkinson and her husband. However the fact may be, it is conceded that on July 24, 1901, Mr. and Mrs. Wilkinson prepared a notice which was afterwards served revoking the consent theretofore granted.

It would seem from that revocation and the subsequent maintenance of the fence that such maintenance was in defiance of the Wilkinsons and was hostile to their claim. If the position thus asserted and the fence thus erected were continuously maintained after twenty years and there were no circumstances destructive of the potency of such facts, title by adverse possession would undoubtedly result. There were, however, negotiations carried on between Colonel Mann and Mrs. Wilkinson covering a number of years in which it was sought to determine the controversy over this south line of lot No. 94. On the 28th day of June, 1904, Colonel Mann wrote Mrs. Wilkinson, among other things: " Surely

neither of us would have an inch of land or anything else that rightfully belonged to the other." At that moment, as the jury have held and as I believe the fact to be, the disputed land did not belong to Mrs. Vynne and consequently she would not have it.

Later Colonel Mann, according to the testimony of Clarence Akin, a reputable lawyer of Troy, offered Mrs. Wilkinson $2,500 for the point providing Mrs. Wilkinson would accommodate him with a supply of water from her spring. A year after that, September 6, 1905, Colonel Mann wrote Akin repeating in substance his offer of a year before and stating: " If this offer is not acceptable, I see no course for me to pursue but to sit down * * *. If I sit down I will remain in my seat until the last legal power to move me shall be reached and applied." He had not then sat down. He was at the time he made the offer, a year before, not standing on an ownership involving adverse possession nor the correctness of his survey. But if he could not secure that point by purchase he would fight for it on his title. There came a time when he sat down. It was then that his claim to possession became open, hostile and exclusive.

If his claim of adverse possession was instituted at any time back of twenty years before the commencement of this action and such possession continued open, hostile, notorious and exclusive it had ripened into title. Notwithstanding what has been held in *Jackson* v. *Britton* (4 Wend. 507) and *Mayor, etc.,* v. *Mott* (60 Hun, 423) the Court of Appeals in *Greene* v. *Couse* (127 N. Y. 386) seem to have settled the law that any person not claiming under the title of a plaintiff but claiming under an opposing title can offer to buy outstanding titles to fortify his own with impunity. The rule in relation to estoppel does not apply " where at the time of the purchase the vendee is in possession as owner claiming title, and his original entry was not under the vendor." (*Glen* v. *Gibson*, 9 Barb. 634, 640.) In the case last cited it is also said: " Where a man is in possession of land as owner, claiming title, he is at liberty to purchase the land over again as often as claimants shall appear who are not in possession and thus quiet such claims." (*Zapf* v. *Carter*, 70 App. Div. 400; *Knapp* v. *City of New York*, 140 id. 296.)

According to the provisions of section 459 of the Civil Practice Act the jury may in their discretion in an action to recover real property find a special or general verdict. In the action at bar it has found a special verdict. (Civ. Prac. Act, § 458; *Ketcham Nat. Bank* v. *Hagen*, 164 N. Y. 446.) The discretion is that of the jury not that of the court. So that the court had no power to direct a general verdict. It may direct judgment on a special verdict embracing the finding of all the necessary facts. The practice pursued in denying the motion to set aside one finding of

the special verdict and granting it as to another seems in conformity with the power lodged in the jury. We are impressed that the case has been thoroughly tried, the sources of evidence exhaustively investigated and the verdict of the jury the only reasonable one that could have been rendered by it. If its rendition had been otherwise we should have been constrained to set it aside. We think it an imposition of an unnecessary burden upon the machinery of the courts to require a new trial where the probability of changing the controlling facts is so remote. We, therefore, think the verdict on adverse possession in favor of the plaintiffs should be reinstated and the order setting it aside should be reversed on the facts; that the order on the motion to set aside the verdict of the jury on the ownership of the record title should be affirmed and that judgment should be rendered for the plaintiffs in accordance with the verdict, with costs and disbursements to the plaintiffs.

COCHRANE, P. J., H. T. KELLOGG, VAN KIRK and HINMAN, JJ., concur.

Order, so far as it denies the motion to set aside the special verdict finding the record title in the plaintiffs, affirmed; and so far as it sets aside the special verdict of the jury in favor of the plaintiffs on adverse possession, reversed on the law and facts, and the clerk of Warren county directed to enter judgment for the plaintiffs, with costs.