■ NEW ENGLAND MUTUAL LIFE INSURANCE CO., Respondent-Appellant, v DETECTIVES' ENDOWMENT ASSOCIATION OF POLICE DEPARTMENT OF CITY OF NEW YORK et al., Appellants-Respondents.—Order, Supreme Court, New York County (Martin Stecher, J.), entered on March 1, 1990, which granted plaintiff's motion to set aside a jury verdict as to damages and directed a new trial solely on the issue of damages, unanimously affirmed, without costs.

Plaintiff seeks in this action to recover $118,430 in insurance premiums, plus interest, which, it alleged, it was due for dental insurance coverage which it supplied to the members of defendant Detectives' Endowment Association (DEA), a municipal union, and its affiliates. At trial, it emerged that, according to the bid which had been submitted by plaintiff in February 1983, the dental coverage was to be provided at a premium of $24.78 per member per month for 16 months. However, the actual payment was to be made at the rate of $19.83 per month. The parties never executed an agreement clarifying DEA's obligations for the difference in these two figures. According to plaintiff's witnesses, the parties agreed that DEA would pay $19.83 per member per month, and if, over the initial 12 month period, the total cost to plaintiff of both claims paid and "retention," *i.e.,* certain costs of doing business, exceeded the amount collected, DEA would reimburse plaintiff for the difference with a cap of $24.78 per person per month, *i.e.,* $4.95 over the lower rate.

Plaintiff submitted evidence as to the elements included in retention, such as commissions, premium taxes, claim handling expenses, risk charges and overhead, and plaintiff's underwriter testified that the amount of retention to be charged was computed as a percentage of the premium, which, she claimed, in this case was 17.6%. However, other evidence submitted by plaintiff indicated that retention was to have equalled only 10% to 11% of the premium. Plaintiff also claimed that the parties had agreed that, if the policy were cancelled before 12 months expired, plaintiff would be retroactively and automatically entitled to the premium calculated at the $24.78 rate. DEA's position was that the parties had

agreed that the lower premium would be in effect for 16 months, and, if the experience during that period warranted, the premium would be increased, but only prospectively.

On February 24, 1983, DEA's Trustees accepted plaintiff's bid and shortly thereafter submitted an application, which plaintiff accepted. Although the policy itself had not yet been approved by the New York State Insurance Department, after March 1, 1983, as permitted by 11 NYCRR 52.32, DEA's members proceeded to submit claims to plaintiff that were processed and paid and DEA duly paid its premium at the $19.83 rate.

DEA terminated its insurance, as it was entitled to do, on August 31, 1983, only six months after it had begun. At that point, plaintiff claimed that it was entitled to a retroactive payment of the difference between the premium actually paid, from the commencement of the coverage, and the premium as calculated at the rate of $24.78 per member per month, *i.e.*, $118,430. DEA refused to pay any more than the premium calculated at the $19.83 rate.

The jury, in a special verdict, found that the parties had agreed that the premium would be $19.83 per person per month, to be increased retroactively, based on twelve months' experience, by a sum necessary to cover claims paid plus retention, not exceeding an additional $4.95 per person per month. It also found that there was no agreement that, if DEA cancelled coverage before twelve months had elapsed, DEA would automatically be liable for the full additional $4.95 per month.

Having made these findings, the jury was then asked to determine, "Had the parties agreed that the premium would be $19.83 per covered person per month to be increased retroactively based on 6 months experience *by a sum necessary to cover dental claims plus 'retention'*, not exceeding $4.95 per covered person per month, to what additional sum per covered person per month would the plaintiff be entitled, if any?" (Emphasis supplied.)

The jury was charged that, since it would answer this question only if it first found "that there was an agreement for a retroactive premium based upon 12 months' experience, and * * * that the parties never reached an agreement on what would happen if a policy was cancelled for short term, then it's for [the court] to decide, not for the jury * * * whether, in equity, the defendant should be required to make a payment to the plaintiff. But [the court] cannot decide what

that amount should be. Only the jury can decide what that amount should be, that is what this last question is intended to do." The jury decided that this amount would equal $1.38 per person per month, almost the precise amount by which claims paid out by plaintiff exceeded premiums collected.

The IAS court denied plaintiff's motion to set aside the finding that the parties had not agreed that, upon premature cancellation, DEA would automatically pay the premium at the $24.78 rate, and for a directed verdict in its favor in the amount of $118,430. However, finding that the jury had ignored its instruction to include other factors in addition to claims paid in determining the amount that would be due plaintiff under that portion of the verdict which fixed the amount of damages, the IAS court set aside that finding and ordered a new trial on damages.

A special verdict is one in which the jury finds the facts only, leaving the court to determine which party is entitled to judgment thereon. (CPLR 4111 [b].) The court has the power to set aside one of several findings in a special verdict either on the law or as against the weight of the evidence (see, Shaw v Roovers Bros., 289 NY 348; Arcady Camps v Berry, 207 App Div 63). In this case, we find that the IAS court properly refused to set aside the jury's second finding, i.e., that the parties never agreed that plaintiff would be automatically entitled to $24.78 per person per month upon cancellation of the policy before twelve months. This finding is supported by the evidence, and we find no reason to disturb it.

We also find that the court properly set aside the finding rendered by the jury on the final question as to what the damages would have been had the parties agreed to compute the retroactive premium after six, rather than twelve months.

Defendant never raised any objection to the form or substance of the questions submitted to the jury nor in any way suggested that any question was improper, and cannot raise such issue for the first time on appeal. (See, CPLR 4111 [b]; see also, Loughry v Lincoln First Bank, 67 NY2d 369, 376.) In any event, the formulation of the now contested inquiry was completely proper.

The question which the court submitted to the jury precisely framed the issue and was specifically limited to a determination of what figure would compensate plaintiff for both claims paid and retention based on six months' experience. The jury was given no discretion to decide that plaintiff should be compensated solely for claims paid. Since, as defen-

dant acknowledges, the amount set by the jury in response to this question was virtually exactly the amount by which claims paid exceeded the premium paid, it is clear that the jury did not compensate plaintiff for *any* retention. Although the amount of retention was clearly a question of fact, and the jury was not required to accept the figures quoted by plaintiff's witnesses, the jury's finding, which assumed that plaintiff had absolutely no overhead or processing costs at all, was clearly at variance with the uncontradicted evidence. While, in some cases, a verdict which compensates a party for only one portion of its damages indicates the existence of a trade-off or compromise as to liability *(see, Figliomeni v Board of Educ.,* 38 NY2d 178), in this case no such circumstance can be found to exist. When the jury reached the final question, it was no longer asked, or even permitted to consider, the question of liability. The inquiry was based on the assumption that there was liability and was strictly limited to what retroactive increase in the premium, not exceeding $4.95 per person per month would compensate plaintiff for both claims paid and retention. The verdict having failed to make any award at all for the latter element, as required by the court's instruction, was against the weight of the credible evidence and was properly set aside by the trial court. Concur—Carro, J. P., Milonas, Ellerin, Kupferman and Rubin, JJ.